IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STRUCTURAL PRESERVATION          *
  SYSTEMS, LLC
                Plaintiffs       *

        vs.                      *    CIVIL ACTION NO. MJG-12-1850

JAMES L. ANDREWS, et al.         *

            Defendants           *

*      *      *      *      *      *      *      *      *

<u>MEMORANDUM AND ORDER RE: MOTIONS TO DISMISS</u>

The Court has before it:

- Defendants Sean Turner's and Benjamin Ball's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 4];

- Defendants Sean Turner's and Benjamin Ball's Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 23], and Second Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 34];

- Defendant James L. Andrews' Motion to Dismiss for Lack of Jurisdiction, For Failure to State a Claim and/or Improper Venue or, Alternatively, to Transfer Under Forum <u>Non</u> <u>Conveniens</u> [Document 28];

- Plaintiff Structural Preservation Systems, LLC's Motion to Strike Part of Defendant James L. Andrews' Motion to Dismiss [Document 31];

and the materials submitted relating thereto.  The Court has

held a hearing and has had the benefit of the arguments of

counsel.

I.   <u>BACKGROUND</u>[1]

At all times relevant hereto, Plaintiff Structural Preservation Systems, LLC ("SPS"), based in Hanover, Maryland, has been a specialty contractor providing construction and engineering services.  In 2006 and 2007, SPS entered into employment contracts with Defendants Sean Turner ("Turner"), Benjamin Ball ("Ball"), and James Andrews ("Andrews") (collectively, the "Defendants"), each of whom is presently a resident of California.

Following SPS's termination of the Defendants' employment, the Defendants engaged in a business venture and other post-SPS employment activities. SPS claims that in the course of so doing, the Defendants violated their respective employment agreements and the Maryland Uniform Trade Secrets Act ("MUTSA"). In particular, SPS alleges – among other things - that the Defendants have wrongfully used and continue to use SPS's financial data, pricing and bidding information, marketing and sales information, and other trade secret or confidential business information.

The Complaint presents claims in five Counts, one of which[2] SPS has dismissed, leaving pending:

---

[1]     The "facts" are stated herein as alleged by Plaintiff and not agreed upon in various respects by Defendants.
[2]     Count III.

Count I- Breach of Contract (Confidentiality Provisions) (All Defendants);

Count II- Violation of Maryland Uniform Trade Secrets Act (All Defendants);

Count IV- Breach of Contract (Non-Disparagement Provision) (Andrews); and

Count V- Declaratory Judgment (Andrews, Disparagement[3]).

By the instant motions, each Defendant seeks dismissal of the Complaint against him for lack of personal jurisdiction and/or improper venue under Federal Rules of Civil Procedure 12(b)(2) and (3) or, alternatively, transfer to the Central District of California under 28 U.S.C. § 1404(a).  In addition, Andrews seeks dismissal of all claims pending against him pursuant to Federal Rule of Civil Procedure 12(b)(6).[4]

---

[3]     SPS has dismissed all claims in Count V relating to the non-competition provision in Andrews' employment agreement.
[4]     On September 13, 2012, the Court held a hearing relating solely to Turner's and Ball's dismissal motion.  For the reasons stated on the record of that hearing, the Court allowed the Parties to engage in limited discovery relating to issues regarding the enforceability of Turner's and Ball's respective employment agreements and ordered Andrews to file his dismissal motion [Document 27].  After the completion of such discovery and further briefing, the Court held a hearing on January 4, 2013.

## II.   DISMISSAL STANDARDS

### A.   Jurisdiction and Venue - Rule[5] 12(b)(2) and (3)

A defendant may move for dismissal on the basis of a lack of personal jurisdiction and/or improper venue pursuant to Rule 12(b)(2) and (3).

In the Fourth Circuit, a motion to dismiss based on a forum-selection clause is generally treated as a motion under Rule 12(b)(3) to dismiss on the basis of improper venue rather than under Rule 12(b)(2) as a  motion to dismiss for lack of personal jurisdiction.  See e.g., CoStar Realty Info., Inc. v. Meissner, 604 F. Supp. 2d 757, 763 (D. Md. 2009); Sucampo Pharm., Inc. v. Astellas Pharm., Inc., 471 F.3d 544, 549-50 (4th Cir. 2006); Silo Point II, LLC v. Suffolk Constr. Co., 578 F. Supp. 2d 807, 809 (D. Md. 2008).  Yet, a valid forum-selection clause is capable of conferring personal jurisdiction upon a defendant under principles of consent and waiver.  See CoStar, 604 F. Supp. 2d at 763 ("A forum selection clause can be a consent to personal jurisdiction, or at least a waiver of any objection, when invoked by the plaintiff."); Corrosion Tech. Int'l, LLC v. Anticorrosive Indus. LTDA, 1:10-CV-915 AJT/TCB, 2011 WL 3664575, at *3 (E.D. Va. Aug. 19, 2011); Allstate Ins. Co. v. Cherry, CIV.A. ELH-11-2898, 2012 WL 1425158, at *9 n.10

---

[5]   All Rule references herein are to the Federal Rules of Civil Procedure.

(D. Md. Apr. 23, 2012) ("To be sure, matters concerning forum
selection clauses are resolved as an issue of venue, under Rule
12(b)(3), rather than personal jurisdiction, under Rule
12(b)(2). Nevertheless, I find <u>Offshore</u> persuasive, because
forum selection clauses permit parties to an agreement, in
essence, to contract around principles of personal jurisdiction
by consenting to resolve their disputes in specified
tribunals."). Under either Rule 12(b)(2) or (3), the court is
permitted to consider evidence outside the pleadings in
resolving the motion. <u>Silo</u>, 578 F. Supp. 2d at 809; <u>CoStar</u>, 604
F. Supp. 2d at 763.


    **B.** <u>Rule 12(b)(6)</u>

    A motion to dismiss filed pursuant to Rule 12(b)(6) tests
the legal sufficiency of a complaint. A complaint need only
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief, in order to give the
defendant fair notice of what the . . . claim is and the grounds
upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
555 (2007) (citations omitted). When evaluating a 12(b)(6)
motion to dismiss, a plaintiff's well-pleaded allegations are
accepted as true and the complaint is viewed in the light most
favorable to the plaintiff. However, conclusory statements or a
"formulaic recitation of the elements of a cause of action" will

not suffice.  Id.  A complaint must allege sufficient facts to
"cross 'the line between possibility and plausibility of
entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186,
193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  Id.  Thus,
if the well-pleaded facts contained within a complaint "do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged - but it has not shown -
that the pleader is entitled to relief."  Id. (quoting Ashcroft
v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks
omitted).

III.  DISCUSSION

A.    Forum-Selection Clauses

SPS maintains that this Court has personal jurisdiction
over each Defendant and venue is proper by virtue of the forum-
selection clauses included in their respective employment
agreements and thus dismissal under Rule 12(b)(2) or (3) is
improper.

### 1.   Defendant Ball

On March 15, 2006, Ball – then a resident of Maryland - entered into an employment agreement with "Structural Group, Inc." and "all of its subsidiaries and affiliates."  Ball's employment agreement contains the following forum-selection clause:

> Employee irrevocably consents to the jurisdiction of, and the proper venue in, any courts of the State of Maryland and of the United States District Court for the District of Maryland (if a basis for federal jurisdiction exists) over any disputes or controversies between the parties out of or based on this AGREEEMENT. EMPLOYEE expressly waives any right to object to the maintenance of a suit in any of the state or federal courts of the State of Maryland on the basis of improper venue or of inconvenience of forum.

Ball's Employment Agreement ¶ 13.

### a.   Standing of SPS

Ball contends that SPS cannot enforce the forum-selection clause or employment agreement against him because SPS is not a subsidiary or affiliate of Structural Group, Inc. ("Structural Group").  However, it is undisputed that:

1. Structural Group is the general manager of SPS;

2. SPS is the wholly owned subsidiary of SGI Holdings LLC ("SGI"); and

3. Structural Group owns more than 90% of SGI and is the general manager of SGI.

Black's Law Dictionary defines the term "affiliate" to
include a "corporation that is related to another corporation by
shareholdings or other means of control; a subsidiary, parent,
or sibling corporation" and a "subsidiary" as a corporation "in
which a parent corporation has a controlling share."   Black's
Law Dictionary (9th ed. 2009).   Here, Structural Group is the
(more than) 90% owner of SGI, the entity that wholly owns SPS,
as well as the general manager of SPS.   Thus, the Court finds
the relationship sufficient to constitute SPS a subsidiary
and/or affiliate of Structural Group within the meaning of
Ball's employment agreement.

Accordingly, the Court finds that SPS has standing to
enforce the forum-selection clause against Ball.


b.   "Merely Permissive" Contention

The forum selection clause in Ball's employment agreement
is a "permissive one" in that it does not require that suit be
brought in Maryland.   However, the "merely permissive" nature of
the clause does not provide a ground for dismissal of the case
against Ball on personal jurisdictional or venue grounds.   See S
& D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609
(M.D.N.C. 1997) (explaining that permissive forum-selection
clauses are sometimes referred to as "consent to jurisdiction"
clauses because such clauses specify one court empowered to hear

the litigation which, in effect, waives any objection to
personal jurisdiction or venue in that jurisdiction); CoStar
Realty Info., Inc. v. Meissner, 604 F. Supp. 2d 757, 772 (D. Md.
2009) (explaining that the "phrase 'irrevocably consents'
clearly expresses the Defendants' consent to suit in Maryland").


### c.  Enforceability of Forum-Selection Clause

Ball contends that the forum-selection clause should be set
aside because its enforcement would be unreasonable.  He relies
on the fact that he was only 21-years-old when he signed the
agreement and the allegation that he could not afford to defend
the case if it were to proceed in Maryland.  Ball does not,
however, show that he could afford to defend this case in
California but that the additional cost of proceeding in a
Maryland court would deprive him of that ability.


### i.  Overreaching

Under Maryland law,[6] a forum-selection clause is
unreasonable and unenforceable if "(i) it was induced by fraud
or overreaching, (ii) the contractually selected forum is so

---

[6]    When the validity of a forum-selection clause is challenged
under Rule 12(b)(3) in a diversity case, courts in the District
of Maryland apply state law in determining the enforceability of
the clause.  See TECH USA, Inc. v. Evans, 592 F. Supp. 2d 852,
855 (D. Md. 2009).  In the instant matter, federal subject
matter jurisdiction is based upon diversity of citizenship.

unfair and inconvenient as, for all practical purposes, to deprive the plaintiff of a remedy or its day in court, or (iii) enforcement would contravene a strong public policy of the State where the action is filed." Gilman v. Wheat, First Sec. Inc., 692 A.2d 454, 462-63 (Md. 1997) (adopting standard for enforceability of forum-selection clauses set forth in Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)).  "The burden of proving the unreasonableness of a forum-selection clause is a heavy one, which requires a strong showing that the chosen forum should be set aside." TECH USA, Inc. v. Evans, 592 F. Supp. 2d 852, 856 (D. Md. 2009) (internal quotations omitted).

The Court does not find the fact that Ball was a 21-year-old when he signed the employment agreement indicative of "overreaching."  Indeed, at the time the agreement was entered into, Ball was a Maryland resident.  He has not made the "strong showing" necessary to set aside the forum-selection clause on "overreaching" grounds.

### ii.   Increased Cost of Litigation

Generally, the "increased expense of litigating outside the defendant's home state does not affect the validity of the forum selection clause." LTVN Holdings LLC v. Odeh, CIV. A. CCB-09-0789, 2009 WL 3736526, at *2 (D. Md. Nov. 5, 2009); CoStar, 604 F. Supp. 2d at 765 ("Mere allegations of serious inconvenience

10

are insufficient to meet the 'heavy burden' of showing why
enforcement would be unreasonable."); Mercury W. A.G., Inc. v.
R.J. Reynolds Tobacco Co., 03 CIV. 5262 (JFK), 2004 WL 421793,
at *4 (S.D.N.Y. Mar. 5, 2004) (explaining that "[s]imply
claiming financial distress does not warrant setting aside a
valid forum selection clause").

In regard to pretrial proceedings, particularly including
discovery, there need be no substantial increase in the cost to
the Defendants by virtue of the pendency of the case in this
District.  The Court will neither require the Defendants to
appear at depositions in Maryland, to provide discovery
documents in Maryland, or to appear in court prior to trial.[7]
Further, by virtue of electronic filing and the ability of
counsel to "appear" at hearings without travel to the
courthouse, there will be no need for any California counsel to
travel to Maryland for court proceedings prior to trial.

---

[7]      Regarding the depositions of parties, "under the Federal
Rules of Civil Procedure, a federal court has broad discretion
to determine the appropriate location for a deposition and may
attach conditions, such as the payment of expenses, as it finds
appropriate." Rapoca Energy Co., L.P. v. Amci Exp. Corp., 199
F.R.D. 191, 193 (W.D. Va. 2001); Fed. R. Civ. P. 26(b), (c); see
also Fed. R. Civ. P. 30 (providing that by stipulation or court
order on motion "that a deposition be taken by telephone or
other remote means").  As to third-party discovery, the location
of such discovery is generally dictated by the location of the
third party from whom discovery is sought.  See generally Fed.
R. Civ. P. 45.

To the extent that Defendants choose to be represented by Maryland-based attorneys in depositions in California, they would incur additional travel expenses for counsel.  Of course, if the case were transferred to California so that Defendants retained counsel from that State and not Maryland, they would incur the expense of getting the California attorneys to depositions held in Maryland and other eastern locations.

The Court does not find the asserted extra cost to a defendant of having the case pending in Maryland sufficient to warrant a refusal to enforce the choice of forum provision contained in the employment agreement.


2.   Defendant Turner

Defendant Turner entered into an employment agreement with SPS on November 26, 2007, which contains a forum-selection clause identical to the forum-selection clause included in Ball's employment agreement.[8]

As discussed above, the fact that the forums selection clause is "merely permissive" does not provide a basis for

---

[8]   Defendants Turner and Ball are represented by the same counsel and filed joint dismissal motions in which both asserted the forum-selection clauses in their respective employment agreements are permissive and/or unenforceable due to the financial hardship of litigating in Maryland.  Accordingly, the Court's reasoning and holdings on such issues as to Ball are equally applicable to Defendant Turner.

12

dismissal.  Moreover, for the same reasons discussed as to Ball,
the Court does not find that the asserted increased cost of
litigation in California warrants dismissal of the instant case.

Turner asserts an "overreaching" contention that, as
discussed at the hearing on the instant motions, presents
substantial factual issues.  Accordingly, the Court finds it
necessary to conduct an evidentiary hearing to resolve the
factual disputes surrounding Turner's claim of overreaching by
SPS.  See generally Bay Tobacco, LLC v. Bell Quality Tobacco
Prod., LLC, 261 F. Supp. 2d 483, 492 (E.D. Va. 2003) ("If the
existence of jurisdiction turns on disputed factual questions
the court may resolve the challenge on the basis of a separate
evidentiary hearing or may defer ruling pending receipt at trial
of evidence relevant to the jurisdictional question.") (quoting
Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).


        3.   Defendant Andrews

Defendant Andrews entered into an employment agreement with
SPS on April 1, 2007,[9] in connection with an asset purchase
agreement whereby SPS purchased substantially all of the assets
of his wholly owned corporation, Delta Pacific Builders, Inc.

---

[9]    As amended by the Supplemental Agreement and Release dated
February 5, 2008.

("Delta").[10]  Both the employment agreement and the asset

purchase agreement contain forum-selection provisions.

The employment agreement provides:

> Subject to the Company's [SPS's] rights to
> seek injunctive or other relief in any court
> of competent jurisdiction as provided in
> Section 8 hereof, the state courts of the
> State of Maryland and, if the jurisdictional
> prerequisites exist at the time,[11] the United
> States District Court for the District of
> Maryland, shall have sole and exclusive
> jurisdiction and venue to hear and determine
> any dispute or controversy arising under or
> concerning this Agreement.

Andrews' Employment Agreement ¶ 10.

The asset purchase agreement provides:

> Subject to Buyer's [SPS's] rights to seek
> injunctive or other relief in any court of
> competent jurisdiction as provided in
> Section 3.5 hereof, . . .[12] any suit
> involving any dispute or matter arising
> under this Agreement may only be brought in
> the United States District Court for the
> District of Maryland or in any state court
> located in Baltimore, Maryland; each of the
> parties hereto consents to the exercise of

---

[10]    Entrance into the employment agreement between Andrews and
SPS served as a condition precedent to the "consummation of the
transactions contemplated" by the asset purchase agreement.

[11]    Andrews contends the phrase "if the jurisdictional
prerequisites exist at the time" renders the forum-selection
clause permissive.  However, that phrase when read in context,
modifies "the United States District Court for the District of
Maryland" and rationally refers to the subject matter
jurisdiction perquisites to bringing a claim in federal court.

[12]    There is an exception for disputes that would be subject to
an arbitration clause in the agreement; no party has asserted
that this suit is subject to arbitration.

> personal jurisdiction by such court with
> respect to all such proceedings.

Asset Purchase Agreement ¶ 5.7.

For jurisdictional purposes, it is immaterial whether the instant case is subject to the employment agreement or the asset purchase agreement choice of forum provision.  Both are mandatory, providing exclusive jurisdiction in Maryland courts subject to SPS's right to seek injunctive relief in any court of competent jurisdiction.  IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007) (internal quotations omitted); Koch v. Am. Online, Inc., 139 F. Supp. 2d 690, 692-93 (D. Md. 2000) (explaining a forum-selection clause is considered mandatory if it contains "clear language showing that jurisdiction is appropriate only in the designated forum") (internal quotations omitted).

Moreover, even if the clauses were deemed to be "merely permissive," they would nevertheless provide consent to personal jurisdiction in Maryland.  Therefore, the claims against Andrews shall not be dismissed pursuant to Rule 12(b)(2) and/or (3).

B.    Transfer

All Defendants seek to have the Court transfer the instant action to the Central District of California pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) provides that for "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Certainly, a transfer under § 1404(a) is not precluded by the existence of a forum-selection clause. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29-31 (1988).  However, a plaintiff's choice of forum is "a paramount consideration" that "should not be lightly disturbed."  Datasouth Computer Corp. v. Three Dimensional Techs., Inc., 719 F. Supp. 446, 451 (W.D.N.C. 1989) (quoting Western Steer-Mom 'N' Pop's, Inc. v. FMT Invs., Inc., 578 F. Supp. 260, 265 (W.D.N.C.1984)); see also Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).

A district court is vested with great discretion in determining whether to grant a transfer under § 1404.  See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34 (1998); Southern Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956).  The burden lies with the defendant to show that a transfer is in the interests of justice.  Stratagene v. Parsons Behle & Latimer, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

16

As the Fourth Circuit has stated, "a district court is required to weigh the factors involved and '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

The factors to be considered in determining if defendants have presented grounds that outweigh the weight accorded a plaintiff's choice of venue include witness convenience and access, convenience of the parties, and the interest of justice. See Lynch v. Vanderhoef Builders, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

As discussed above, in regard to pretrial proceedings, so long as the Defendants are not required to appear for depositions in Maryland, the only substantial additional cost to Defendants by virtue of the pendency of the case in Maryland would be incurred where they choose to have Maryland attorneys travel to California for depositions and/or other related matters.

The Court will accept that the Defendants will find it more convenient to proceed to trial in California and SPS will find it more convenient to proceed in Maryland.  However, even if the Defendants would suffer more inconvenience, they have not shown

17

that any relative inconvenience warrants a transfer at the present stage of the case.

It is not now possible, despite (or, perhaps better said, because of) the Parties' respective conflicting predictions, to determine with reasonable certainty which issues will be tried and who will be trial witnesses.  Hence, it is not now possible to determine the effect of the trial subpoena range of the two Districts with regard to non-party witnesses.

The Court finds the statement of Judge Swygert in <u>Bohnen v. Baltimore & O. C. T. R. Co.</u>, 125 F. Supp. 463, 464 (N.D. Ind. 1954) apt where, as here, there is no determinative difference for venue purposes in regard to pretrial proceedings.  As he said, more than a half century ago:

> Section 1404(a) was drafted in accordance with the doctrine of forum non conveniens and permits the transfer of the cause to another forum if such transfer makes the trial of the case easy, expeditious and inexpensive, that is, more convenient for the parties and witnesses.[13] Since these are the factors that must be considered, it would seem proper for the Court to rule on the motion to transfer venue only in the event it is decided that a trial is necessary.

(footnote in original).

The Court will deny the motions seeking transfer pursuant to 28 U.S.C. § 1404(a) without prejudice to reconsideration in

---

[13]   <u>Heller & Co. v. Perry</u>, 7 Cir., 1953, 201 F.2d 525.

light of the circumstances existing when and if trial is necessary.

C.   __Andrews' Rule 12(b)(6) Motion__

Andrews contends that all remaining[14] claims against him are subject to dismissal for failure to state a claim upon which relief can be granted.[15]   Inasmuch as Andrews presents issues pertinent to all Defendants, the Court's resolution of the motion will affect all Defendants.

1.   __Confidentiality – Count I__

Andrews contends Count I should be dismissed as redundant or duplicative of Count II (Violation of MUTSA).

The "Confidentiality Provisions" in Andrews' employment agreement provide that Andrews:

> [W]ill keep confidential and will not
> disclose to anyone (other than the Company)

---

[14]   As discussed _supra_, SPS has dismissed Count III claiming a breach of a non-competition provision by Andrews.

[15]   On a Rule 12(b)(6) motion, the Court may consider documents attached to a dismissal motion without converting the motion into one for summary judgment if the extrinsic evidence is "integral to and explicitly relied on in the complaint" and the plaintiff does not challenge its authenticity.   __Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.__, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotations and citations omitted).   The Court will consider Andrews' employment agreement, attached to his dismissal motion, in connection with his 12(b)(6) contentions because the employment agreement is integral to and explicitly relied on in the Complaint, and SPS does not challenge its authenticity.

> . . . or publish, utter, exploit or make use
> of (or aid others in publishing, uttering,
> exploiting or using) or otherwise
> Misappropriate . . . any Trade Secrets or
> Confidential or Proprietary Information at
> any time.

Andrews' Employment Agreement ¶ 7(a)(1).

Andrews' employment agreement defines "Trade Secrets or
Confidential or Proprietary Information" to include information
that would be considered a "trade secret" within the meaning of
MUTSA as well as information that is "unique to [SPS] which has
a significant business purpose and is not known or generally
available from sources outside [SPS] or typical of industry
practice" or "the disclosure of which would have a material
adverse effect on the business of [SPS]." Id. ¶ 7(c)(4); Md.
Code Ann., Com. Law § 11-1201(e).  The employment agreement
defines "Misappropriation" in substantively the same manner as
MUTSA.  Compare Andrews' Employment Agreement ¶ 7(c)(2), with
Md. Code Ann., Com. Law § 11-1201(c).

As the employment agreement's definition of "Trade Secrets
or Confidential or Proprietary Information" makes clear, the
Confidentiality Provisions are broader and afford greater rights
to SPS than those provided under MUTSA.  Thus, Count I as
pleaded is not redundant of Count II.

Andrews contends that the Confidentiality Provisions are
unenforceable as an unreasonable restraint on trade or a back-

20

door non-compete clause to the extent such provisions are broader than the MUTSA or applicable trade secrets law. Therefore, he argues, the Confidentiality Provisions are preempted by the MUTSA (or applicable trade secrets law), which necessarily renders Count I duplicative of Count II.

The Parties dispute whether Maryland or California law controls.[16] Whether applying Maryland or California law, there exist significant issues as to the enforceability of the Confidentiality Provisions by virtue of having wider breadth than the MUTSA.  See generally Willard Packaging Co., Inc. v. Javier, 899 A.2d 940, 956 n.22 (Md. Ct. Spec. App. 2006) ("[A]n employer has a legitimate interest and so can enforce restrictive covenants only against those employees who provide unique services, or to prevent the future misuse of trade secrets, routes, or lists of clients, or solicitation of customers.") (internal quotations omitted); Latona v. Aetna U.S. Healthcare Inc., 82 F. Supp. 2d 1089, 1096 (C.D. Cal. 1999)(explaining California has a strong public policy against non-compete clauses but employment restrictions that "serve to

---

[16]   The Parties also dispute whether the asset purchase agreement or Andrews' employment agreement is controlling for purposes of the claims against Andrews.  However, both the asset purchase agreement and the employment agreement (as amended by the supplemental agreement and release) provide that the "Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to principles of conflicts of laws."  Supplemental Agreement and Release ¶ 8. In any event, the Court is not now resolving such issues.

protect a former employer's trade secrets, proprietary
information, and confidential information are valid in
California"); Richmond Techs., Inc. v. Aumtech Bus. Solutions,
11-CV-02460-LHK, 2011 WL 2607158, at *16-18 (N.D. Cal. July 1,
2011) (summarizing California law).

A s stated in Republican Party of N. Carolina v. Martin,
980 F.2d 943, 952 (4th Cir. 1992), "[a] motion to dismiss under
Rule 12(b)(6) tests the sufficiency of a complaint; importantly,
it does not resolve contests surrounding the facts, the merits
of a claim, or the applicability of defenses.".

The Court will not dismiss the claims in Count I as
redundant or duplicative of Count II.  However, as discussed
infra, the factual allegations supporting Count I, which are
identical to those supporting Count II, lack clarity and are
insufficient to state a plausible claim for relief.  Hence, the
Court shall dismiss Count I for failure to state a claim.


    2.   Violation of MUTSA (Count II)

In Count II, SPS alleges that the Defendants have
misappropriated SPS's "pricing structure, pricing knowledge and
research, and established customer relationships to directly
compete with SPS and to usurp SPS's business opportunities and
relationships in violation of the MUTSA."

Andrews asserts Count II should be dismissed because the Complaint does not allege facts sufficient to state a plausible claim that the listed items are protectable as "trade secrets" under MUTSA.[17]

The MUTSA defines a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Md. Code Ann., Com. Law § 11-1201(e).

"The existence of a trade secret is a conclusion of law based upon the applicable facts." _Trandes Corp. v. Guy F. Atkinson Co._, 996 F.2d 655, 661 (4th Cir. 1993). The

---

[17] Andrews also asserts California is the applicable law but, as he points out, MUTSA is similar to the California Uniform Trade Secrets Act. _Computer Econ., Inc. v. Gartner Grp., Inc._, 50 F. Supp. 2d 980, 983 (S.D. Cal. 1999) (explaining California adopted the Uniform Trade Secrets Act in 1984); _RaceRedi Motorsports, LLC v. Dart Mach., Ltd._, 640 F. Supp. 2d 660, 666 (D. Md. 2009) (explaining Maryland has adopted the Uniform Trade Secrets Act).

Restatement of Torts sets forth six factors relevant to
determining whether given information constitutes a trade
secret:

> (1) the extent to which the information is
> known outside of his business; (2) the
> extent to which it is known by employees and
> others involved in his business; (3) the
> extent of measures taken by him to guard the
> secrecy of the information; (4) the value of
> the information to him and to his
> competitors; (5) the amount of effort or
> money expended by him in developing the
> information; (6) the ease or difficulty with
> which the information could be properly
> acquired or duplicated by others.

Id. (quoting Restatement (First) of Torts § 757 cmt. b.).
Maryland courts consider the restatement factors to provide
"helpful guidance to determine whether the information in a
given case constitutes 'trade secrets' within the definition of
[MUTSA]." Optic Graphics, Inc. v. Agee, 591 A.2d 578, 585 (Md.
Ct. Spec. App. 1991) (holding that pricing information and
market strategies did not meet the statutory definition of a
trade secret where the pricing information had no "economic
value" to a competitor because it was composed of so many
variables, generally subject to change, and specific to the
plaintiff company and the marketing strategies were readily
available to the marketplace).

   The Court finds that the Complaint lacks sufficient factual
allegations and clarity to present a plausible claim that the

information relied upon is protectable as a "trade secret" under the MUTSA.  For example, it is unclear what the term "established customer relationships" means and how such "relationships" are plausibly construed as a trade secret.  If SPS is referring to customer lists, it must say so with specificity and consistency.  See NaturaLawn of Am., Inc. v. W. Grp., LLC, 484 F. Supp. 2d 392, 399 (D. Md. 2007) (finding "customer lists" of national franchisor of organic based lawn care services to be trade secrets where customers were not widely known outside company and customer lists were carefully guarded).

The Complaint does not allege facts upon which a reasonable inference can be drawn that the claimed "trade secrets" hold independent economic value because such information is not generally known to or readily ascertainable by others in the relevant business.  Further, the Complaint does not allege what "trade secret(s)" it is that Andrews (or any particular Defendant for that matter) misappropriated.

Accordingly, all claims in Count II shall be dismissed.


### 3.   Non-Disparagement Claims (Count IV)

The "Non-Disparagement Provision" of Andrews' employment agreement provides that, for two years following the date Andrews ceases to be an employee of SPS, Andrews:

> [W]ill not directly or indirectly . . . make
> any disparaging remarks about the business,
> services, products, stockholders, officers,
> directors or other personnel of [SPS] or any
> of its Affiliates, or interfere in any way
> with the Company's business.

Andrews' Employment Agreement ¶ 7(b)(5).

Andrews contends that the Complaint does not include factual allegations that "Andrews disparaged [SPS] to any customer, or what, when, where, and most importantly, to whom Andrews made any alleged actionable disparaging statement." Andrews' Mem. [Document 28-1], at 18. The Court must agree.

In the Complaint, SPS alleges that Andrews made

> [S]everal disparaging remarks and false
> accusations against SPS including but not
> limited to that SPS is involved in a bid
> rigging scheme, has raided other corporate
> entities and interfered with other
> business's ventures, and is engaged in
> racism and discrimination.

Compl. ¶ 32. However, SPS does not allege the particular nature of the remarks or to whom or when such remarks were made.

Accordingly, the Court shall dismiss the claims in Count IV due to the failure to allege facts sufficient to present a plausible claim.[18]

---

[18]    Andrews has asserted First Amendment and privilege defenses to the viability of certain statements serving as the basis of any claim for breach of the Non-Disparagement Provision. Generally, a motion to dismiss filed under Rule 12(b)(6) cannot be based upon an affirmative defense unless all of the elements of the defense are alleged by the plaintiff in the complaint

### 4.   Set-Off Declaration(Count V)

In Count V of the Complaint SPS requests a declaratory judgment that Section 12 of Andrews' employment agreement entitles it to set off any damages incurred by SPS as a result of Andrews' breach of the Non-Disparagement Provision against any amount of severance owed to Andrews by SPS.[19]  Andrews has stated that he recently filed suit against SPS in California for employment retaliation and failure to pay his severance payment but has not yet effected service.

SPS concedes that Andrews is entitled to a severance payment but seeks to satisfy its obligation by virtue of its setoff rights under Section 12 of Andrews' employment agreement. This section provides:

> [SPS] shall have the right to setoff (on a dollar for dollar basis), against any and all payments due to Andrews under this Agreement, . . . or (ii) any damages incurred by [SPS] as a result of the violation by Andrews of the confidentiality or non-competition provisions of Section 7 hereof.  The existence of this right shall not preclude or otherwise limit the applicability or exercise of any other

---

and/or extrinsic documents proper for consideration on a 12(b)(6) dismissal motion.  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007); Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). Thus, the Court is not considering Andrews' affirmative defenses at this time.

[19]    As discussed supra, SPS voluntarily dismissed any part of Count V as it related to the Non-Competition Provisions.

> rights and remedies that [SPS] may have at
> law or in equity.

28 U.S.C. § 2201 authorizes federal courts to afford the remedy of declaratory judgment, and provides in pertinent part that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Courts consider the following in determining whether to grant declaratory relief: "(1) the complaint must allege an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court must possess an independent basis for jurisdiction over the parties; and (3) the court must decide whether to exercise its discretion to determine or dismiss the action." Jaguar Land Rover N. Am., LLC v. Manhattan Imp. Cars, Inc., 738 F. Supp. 2d 640, 647 (D. Md. 2010) aff'd, 477 F. App'x 84 (4th Cir. 2012) (quoting Proa v. NRT Mid Atl., Inc., 477 F. Supp. 2d 677, 680 (D. Md. 2007)).

"For a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Ashcroft v. Mattis, 431 U.S. 171, 172 (1977) (internal quotations omitted).

As matters now stand, by virtue of the dismissal of the disparagement claims in Count IV, SPS has not adequately pleaded a dispute calling for an adjudication of present rights.  That is, without a pending disparagement claim, the "set-off" claim is purely hypothetical.

Inasmuch as SPS shall be given leave to file an Amended Complaint, it may seek to present a viable disparagement claim rendering the "set-off" claim adequately "real" for declaratory judgment.  If so, the Court will address any issues that may be raised, including those relating to the effect of the now pending related state court proceeding.

Thus, the Court will dismiss Count V.

### D.   SPS's Motion to Strike

SPS moves to strike portions of Andrews' Motion to Dismiss and the Declaration of James L. Andrews attached thereto to the extent such documents contain inadmissible hearsay and/or allegations of facts of which Andrews does not have first-hand knowledge.[20]  Andrews did not file any response.   Rule 12(f) permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

---

[20]    For example, Andrews' Declaration provides "Any commissions earned and accrued by Mr. Turner once he became a Structural employee were due as wages and were earned in California since Mr. Turner worked in California and was employed in California by Structural."  Andrews' Dec'l [Document 28-2], ¶ 10.

matter."  However, Rule 12(f) motions are generally viewed with disfavor.  <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001).

The Court has not relied upon any of the matters in Andrews' Declaration that are subject to the Motion to Strike. However, the Court does not foreclose Defendants Andrews and Ball from seeking relief, including a transfer of venue, should the Court dismiss (or transfer) all claims against Defendant Turner.  Accordingly, the Motion to Strike shall be denied.

IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendants Sean Turner's and Benjamin Ball's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 4] is DENIED IN PART.

2. Defendant Sean Turner's and Benjamin Ball's Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 23], and Second Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 34] are DENIED IN PART.

3. Defendant James L. Andrews' Motion to Dismiss for Lack of Jurisdiction, For Failure to State a Claim and/or Improper Venue or, Alternatively, to Transfer Under Forum <u>Non</u> <u>Conveniens</u> [Document 28] is GRANTED IN PART.

4. Plaintiff Structural Preservation Systems, LLC's Motion to Strike Part of Defendant James L. Andrews' Motion to Dismiss [Document 31] is DENIED.

5.   Plaintiff may file an Amended Complaint by April 1, 2013.

6.   By further Order, the Court shall schedule an evidentiary hearing on Defendant Turner's "overreaching claims."


SO ORDERED, this Wednesday, February 06, 2013.


                        _____/s/_____
                          Marvin J. Garbis
                       United States District Judge