```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

STRUCTURAL PRESERVATION      *
SYSTEMS, LLC
           Plaintiffs        *

           vs.               *   CIVIL ACTION NO. MJG-12-1850

JAMES L. ANDREWS, et al.     *

           Defendants        *

*     *      *      *      *      *      *      *      *

## MEMORANDUM AND ORDER RE: DEFENDANT TURNER [JURISDICTION]

The Court has before it the issues pertaining to Defendant Sean Turner presented by:

- Defendants Sean Turner's and Benjamin Ball's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 4];

- Defendants Sean Turner's and Benjamin Ball's Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 23], and Second Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 34].

The Court has read the materials submitted relating thereto and has held a hearing, including the presentation of evidence relating to the issues resolved herein. The Court has made the factual findings stated herein based on its evaluation of the evidence and the reasonable inferences drawn therefrom.

I.  BACKGROUND

At all times relevant hereto, Plaintiff Structural Preservation Systems, LLC ("SPS"), based in Hanover, Maryland, has been a specialty contractor providing construction and engineering services. In early 2007, SPS acquired the assets of Delta Pacific Builders, Inc. ("Delta"), based in California and, as of April 1, 2007, essentially took over Delta's operations. Consequently, Defendant Sean Turner ("Turner") – a Delta employee - began working for SPS on April 1, 2007. In 2010, Turner left the employ of SPS.

In the instant lawsuit, SPS asserts claims against Turner[1] based upon alleged breaches of the terms of an employment related agreement (the "Agreement") and violations of the Maryland Uniform Trade Secrets Act ("MUTSA"). Turner, a resident of California, seeks dismissal or transfer of all claims against him based upon the absence of personal jurisdiction and improper venue. SPS relies upon a forum selection clause in the Agreement as the basis for jurisdiction and proper venue in Maryland.

As stated in the Memorandum and Order Re: Motions to Dismiss [Document 43], at 13:

> Defendant Turner entered into an employment agreement with SPS on November 26, 2007, which contains a forum-selection clause

---

[1]  And other Defendants.

> [consenting to jurisdiction and venue in Maryland in regard to claims of the type asserted in the instant case].
>
> Turner asserts an "overreaching" contention that, as discussed at the hearing on the instant motions, presents substantial factual issues. Accordingly, the Court finds it necessary to conduct an evidentiary hearing to resolve the factual disputes surrounding Turner's claim of overreaching by SPS. See generally Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC, 261 F. Supp. 2d 483, 492 (E.D. Va. 2003) ("If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.") (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

## II. LEGAL FRAMEWORK

The instant motion, seeking dismissal for lack of jurisdiction and venue, arises in a procedural context favoring Plaintiff SPS.[2]

In the instant diversity action, the enforceability of Turner's forum-selection clause is governed by state law. See TECH USA, Inc. v. Evans, 592 F. Supp. 2d 852, 855 (D. Md. 2009). While the parties debate whether Maryland or California state law is controlling, the issue is moot. Under both Maryland and

---

[2] In the Fourth Circuit a motion to dismiss based on a forum-selection clause is generally treated as a motion under Rule 12(b)(3) to dismiss on the basis of improper venue. [Document 43] at 4.

California law, forum-selection clauses are presumptively valid and enforceable. See Trident Labs, Inc. v. Merrill Lynch Commercial Fin. Corp., 132 Cal. Rptr. 3d 551, 556 (Ct. App. 2011); Gilman v. Wheat, First Sec. Inc., 692 A.2d 454 (Md. 1997) (adopting standard for enforceability of forum-selection clauses set forth in Bremen v. Zapata off-Shore Co., 407 U.S. 1, 10 (1972)). Consequently, the party seeking to resist the implications of a forum-selection clause bears a "heavy burden", requiring it to demonstrate that enforcement of the clause would be unreasonable under the circumstances of the case. See Lu v. Dryclean-U.S.A. of Ca., Inc., 14 Cal. Rptr. 2d 906, 907 (Ct. App. 1992); TECH USA, 592 F. Supp. 2d at 856.

III. DISCUSSION

In order to establish that the forum-selection clause contained in the Agreement is unreasonable and unenforceable as a product of fraud or overreaching Turner must make a strong showing that SPS obtained his accession to the forum-selection clause by fraud or overreaching. See Cal-State Bus. Prods. & Servs., Inc. v. Ricoh, 16 Cal. Rptr. 2d 417, 424 (Ct. App. 1993); Secure Fin. Serv., Inc. v. Popular Leasing USA, Inc., 892

A.2d 571, 577 (Md. 2006).³ While the Court is not now deciding that SPS would be entitled to summary judgment as to the enforceability of the Agreement, it finds that Turner has not made the strong showing necessary to prevail in the jurisdictional context.

Prior to 2007 and in the first quarter of 2007, as an employee of Delta, Turner received commissions determined by reference to the profit margin realized by Delta on projects that he sold. Specifically, at the end of each calendar quarter his commissionable sales were determined and payment of the quarter's commissions were made during the following quarter with reference to payment received by Delta.

On February 27, 2007, in anticipation of becoming a SPS employee after the acquisition, Turner signed a document acknowledging that he understood his employment with SPS to be at will. Pl's Ex. 4. Turner testified that an authorized SPS person promised that, starting April 1, 2007, as a SPS employee, he would be paid commissions by SPS on the same basis as he had been paid by Delta. Co-Defendant James L. Andrews ("Andrews") testified that he was led to believe by SPS that Turner would be

---

³ In order to prevail on this point, Turner must prove that the forum selection clause itself - not the agreement as a whole - is the product of fraud or overreaching. See Mazzola v. Roomster Corp., CV 10-5954 AHM JCGX, 2010 WL 4916610, at *2 (C.D. Cal. Nov. 30, 2010); Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC, CIV.A. DKC 09-0921, 2009 WL 4062095, at *2 (D. Md. Nov. 20, 2009).

5

paid commissions on that basis.  The Court will assume that Turner and Andrews presented testimony consistent with their best recollection.  However, the Court does not find the evidence as a whole sufficient to establish that SPS made such a commitment as distinct from a willingness to consider introducing a commission system.  Indeed, the "hard" evidence – realistically evaluated – establishes that neither SPS nor Turner acted in a manner consistent with such an agreement but that that their respective actions are consistent with the absence of a definite agreement to pay Turner on a "Delta-style" commission basis.

Turner was paid the amount of commissions due to him, under the Delta system, for the sales he made <u>as a Delta employee</u>, in the first quarter of 2007.[4]  The fact that SPS paid these commissions – owed Turner for work he had done while a Delta employee - does not mean that SPS paid him, or promised to pay him, commissions for work done as a SPS employee.  There is no evidence that SPS ever paid commissions to any employee on the Delta basis.  Moreover, when Turner began work as a SPS employee he was given a base salary raise from the $80,000 paid by Delta to $96,000 per year.

---

[4]  In June and July of 2007, SPS made two payments to Turner totaling $13,813.28, representing his "Commission for 1st Qtr 2007 under the Delta Plan."  Pl.'s Ex. 9, 11.

6

As of the end of the second quarter of 2007, Turner's sales in that quarter would have entitled him to commission payments sometime in late summer or early fall. There were no such payments and no indication that SPS took any steps toward determining what Turner's Delta-style commission would have been.

The SPS fiscal year ended September 30, 2007. Under the SPS Incentive Compensation Plan, employees could[5] receive additional compensation in the form of a percentage of their base salary payable by the end of the calendar year. In November 2007, Mike Szoke ("Szoke"), Turner's manager at SPS, presented Turner with the Agreement and a worksheet showing that, in addition to his base pay, Turner could receive Incentive Compensation Plan compensation totaling $14,717.00 with regard to the SPS fiscal year ending September 30, 2007. The ICP worksheet attached to the Agreement given to Turner unambiguously reflected that the $14,717.00 amount was computed pursuant to the ICP plan and did not include any Delta-style commission.[6]

---

[5] The decision to make payments under the ICP was discretionary with SPS management.

[6] The ICP worksheet showed a base bonus of 20% of Turner's salary awarded as a result of SPS achieving an overall profitability goal and a "kicker" of 10% of Turner's salary awarded as a result of Turner reaching his individual sales goal. Pl.'s Ex. 7.

7

The Agreement provided to Turner, has not been shown to be materially – if at all - different from agreements generally utilized by SPS, stated:

> 1. The COMPANY maintains an Incentive Compensation Program ("ICP"). 50% of the incentive payout is paid in December following the end of the fiscal year (September 30) and 50% of the incentive payout is paid 12 months later. Each payment is contingent upon continued employment with the COMPANY on the date of payment. If you enter into this agreement with the COMPANY, the COMPANY will modify the incentive payout timing to pay 100% in the December following the end of the fiscal year.

Pl.'s Ex. 1.

The Agreement included, in addition to substantive provisions on which SPS bases claims against Turner, the forum selection clause here at issue.

Turner recalls that, when Szoke gave him the Agreement, Szoke said it "ain't any good in California anyway." Turner testified on cross-examination that he understood Szoke's statement to refer to the non-compete provisions of the agreement because Turner believed the Agreement to be a non-compete contract.

In any event, it was perfectly clear to Turner that he was not going to get all of the $14,717, but only half, in December unless he signed the Agreement. Moreover, Szoke told Turner to

take the Agreement and, if he wished, consult with an attorney. Turner did not consult with counsel, had whatever discussions he chose to have, and returned the signed Agreement to SPS in a few days.

Turner received the $14,717 pursuant to the Agreement and then – with full knowledge that he was not going to be paid on any commission basis - proceeded to work for SPS for more than three years. During those years, Turner received additional compensation under the ICP program and took no steps to enforce any alleged right to Delta-style commissions. See generally Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1141 (9th Cir. 2004) (finding allegation of overreaching insufficient where party signed a new contract with a similar forum-selection clause annually for four years).

The Court does not find that Turner's asserted financial needs rendered his signing of the Agreement to have been a coerced action. The Court does not find that Turner, a highly skilled salesman[7], lacked employment opportunities had he chosen to leave SPS. Turner has not proven that he "faced financial

---

[7] Andrews testified that in late November 2007, he informed SPS that Turner could find gainful employment outside of SPS during a conversation related to why Turner had not received or would not be receiving commissions.

ruin"[8] had he refused to sign the Agreement and taken half of the $14,717 in December 2007 and the balance in December 2008.

In sum, the Court finds that Turner has not made the "strong showing" necessary to overcome the presumption that the forum selection clause in the Agreement is valid and enforceable for purposes of the instant motions. However, Turner is not foreclosed from contending, in a later phase of this case, that the entire Agreement is unenforceable against him. In a substantive context, SPS will not have the benefit of a presumption that the Agreement is valid and enforceable and in such a context a fact-finder will not be bound by the instant decision.

IV. CONCLUSION

For the foregoing reasons:

1. Defendants Sean Turner's and Benjamin Ball's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 4] is DENIED.

2. Defendants Sean Turner's and Benjamin Ball's Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 23] and Second Supplement to Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Document 34] is DENIED.

---

[8] See Rich & Whillock, Inc. v. Ashton Dev., Inc., 204 Cal. Rptr. 86, 89 (Ct. App. 1984).

3. The claims herein against Defendant Sean Turner shall not be dismissed or transferred on jurisdictional or venue grounds.[9]

SO ORDERED, this <u>Tuesday, May 21, 2013</u>.

/s/
Marvin J. Garbis
United States District Judge

---

[9] As stated in the Memorandum and Order Re: Motions to Dismiss [Document 43, at 18-19, the Court denies the motions seeking transfer pursuant to 28 U.S.C. § 1404(a) without prejudice to reconsideration in light of the circumstances existing when and if trial is necessary.